I'll reserve three minutes for rebuttal. Very well. This case involves the government's attempt to collect against valuable royalty rights under fraudulent conveyance, alter ego, and nominee theories. The undisputed facts show that Edward Holland transferred those royalty rights to a wholly owned partnership at a time when he already owed millions of dollars in taxes, was continuing to accrue millions more, and that he continued to borrow against those assets for his personal benefit following the transfer. However, the district court failed to accord weight to these facts, as well as other facts supporting the government's collection theories, and rejected those theories based solely on its determination that the transfer was made for adequate consideration. The transfer, was it just for the 1998 through 2005 royalty rights? Because there seems to be another transfer in 2005 when they do the refinance. The royalty rights were transferred from Mr. Holland to the partnership. The partnership then becomes the legal owner, holds legal titles to all of the royalties. So it was transferred all together, not just for the rights for a certain period of years. Is that correct? That's correct. So what gets transferred in 2005, just so we understand the lay of the land here? We don't think that there was a transfer in 2005. There was a loan refinance. So the loan that was executed simultaneous with the 1998 transaction is refinanced. So the original loan is paid off. You're not relying upon anything that happened in 2005 for either your fraudulent conveyance, alter ego, or nominee theory, right? That all has to go back to 1998. No, Your Honor. We think this looks at the entire course of conduct, at least for the... How on earth can a transfer in 1998 be deemed to be fraudulent, alter ego, or nominee because of something that happened seven years later? So Your Honor, this court in spots, when it was looking at the nominee theory, said that the appropriate time frame to focus on is when the IRS actually assesses taxes, when the tax liens arise as a matter of law. And so looking at that time period, we're focused on Holland's relationship to these royalty rights during the time period of roughly 2003 to... But if you take that view, in 1998, the transaction actually led to the elimination of all assessed taxes. So doesn't that undermine, in some respects, the idea that this was fraudulent? Since, as I understand it, all the assessed taxes in 1998 were paid off by the original loan or the original transaction. Yes, Your Honor. So let me speak to this, both in terms of the liabilities that existed at the time of the 98 transfer, as well as what difference that makes to the government's collection theories. So it's correct that the 1986 and the 1990 taxes were the ones that had been assessed at that time period, but they were not the only liabilities that were due and owing. If you look at this court's decision, Adams Building Company, the Eighth Circuit's decision in Sherping, taxes are due and owing on April 15th, the day that return is due to be filed, the day that payment is required to be remitted, even in the absence of a formal assessment. What is the difference, for those of us who aren't specialists in your field, between due and owing and assessed? Due and owing means that the government is a creditor and the taxpayer is a debtor at that moment. What does assessed add? Assessed means that the government can actually take formal steps, that there's a lien that rises as a matter of law and the government can collect that liability. The government can't collect the liability until it's been formally assessed. What do you do to assess? It's the recording of the liability on the books and records of the IRS. The issue being that the IRS couldn't formally assess these taxes because there were tax court proceedings that were initiated by Mr. Holland. Under 6213A of the Internal Revenue Code, the IRS cannot take the formal act of assessment or the acts of collection until the tax court litigation has concluded. So at the time that this happened, he's actually contesting what the government claims that he owes, correct? That's correct. So you're saying that any time a bank loans money to somebody or an entity that that person is using legally, like a corporation, you have to look back to see if the sole shareholder that transferred the assets to the corporation, if the government claims that that person owed any taxes, whether they've levied or not, and if the government says they owed taxes years ago, then you can then claim that that transfer into the corporation was fraudulent. We think that you have to look at the facts and circumstances. You have to look at both direct evidence of an intent to hinder, delay, or defraud present or future creditors, as well as badges of fraud that give rise to an inference of such an intent. Well, let's stop at the first one. Is there anything wrong in theory with him collateralizing this future stream of payments into essentially what its present value was? Is there anything wrong with him doing that? In theory, Your Honor, no. There's nothing wrong. So if he had put the money in the bank and just left the money there, you wouldn't have a claim, right? The taxes wouldn't be due in owing. We would take the money and the taxes would have been paid. That's correct. Well, you're taking one more step. So if he had gotten this $15 million and he just simply put it in the bank, then there'd be no basis for any of your three claims to look through the transaction. Is that right? There wouldn't be a basis for a fraudulent conveyance claim because there wouldn't be an intent to hinder, delay, or defraud if the money was sitting there awaiting the IRS making the formal assessment and taking the step of collection. Who's going to put the money in an account waiting for the government? They're going to put the money in the account because they got the money from collateralizing these assets, and they're either going to spend it, which is what he did, or they're going to put it in an account. Well, but by spending it, there was no money left over for the government when these taxes were ultimately assessed after the tax court litigation was completed. But there was money left over. He bought two houses, right? The IRS ultimately... He bought... Did he buy two houses? Yes. He purchased two houses in his own name. And he used a combination of debt and money to buy those houses, right? I believe... I don't know if there is... It's $3.8 million of houses and $2.5 million of mortgages. So there's $1.3 million in equity in those houses at the time he buys them, correct? Yes, Your Honor. So that covers... That plus the amount that he actually paid down on the taxes comes pretty close to equaling the amount of money that, at that point, the IRS said he owed. The IRS had proposed a $1.8 million deficiency of taxes and penalties for the 91 through 94 years in addition to... $2.1 million in interest, so that's $3.8 or $9 million, right? Correct. So he had, in the money that... Of that part that was then paid down, plus the equity in the two houses, it almost equals what, at that point, the government said he owed. Am I close? I mean, there's an interest calculation that's not built into the $1.8, but yes, I mean, it would be... I added in the $2.1 you're claiming in interest on top of the $1.8. $1.8 plus $2.1 plus $1.2 that had been assessed. So we get a bigger number than that. You're talking about the prior? Or the assessed? That's correct. That was actually paid off. Correct. Okay. That gets paid off. So ignore... So I'm not exactly right on money, but the point is, he had, in the houses alone, plus what he paid down on the debt, he had covered, just in the houses, a fairly good portion of what the government claimed that he owed. Is that right? That's true, but those houses were... Now, he also had the partnership shares, right? Well, can I ask a question about your high ball? Sure. Were you able to collect on the houses in any way? So it's my understanding that both houses were purchased in Mr. Holland's name. He subsequently transferred them to related parties, so they were no longer in his name. Did you challenge at any point the houses or the transfer of the houses? The government was able to claw back and seize one of the properties, which was transferred to his son. The other property, I don't believe the IRS was able to reach. I don't know exactly why it wasn't able to reach that second property. Well, if he transferred it, presumably he transferred it for value, and then you could have reached the value, unless maybe he dissipated that as well. But in any event, you got some equity in the houses. He pays down a portion of the debt, but there's no dispute about those two things, right? Correct. It's the old debt, though. And then he has the partnership shares. That's also correct, Your Honor. So did you go after the partnership shares? Well, the IRS has not foreclosed on the partnership shares, no, but that partnership interest is substantially less valuable than the royalty rights held in Mr. Holland's own name because he had encumbered the assets following the transfer. So if I can just walk through what happened. So this is all against the backdrop of the fact that the IRS had served a notice of intent to levy on the royalty rights, as it had done repeatedly and successfully in the past. How come you wouldn't have priority over whatever encumbrance was on the partnership shares? Because right now we can't directly attach the partnership assets. We have taxes that are owed by Holland, tax liens that are filed against Holland. But unless... Wait, no. Holland owns the partnership shares, correct? Correct. Why? I mean, are those worth anything, those shares? Were they worth anything at the time, after the transaction, in 98? They have a value, but after the 98 transaction, there was $15 million of debt sitting on top of those. Okay, but I'm asking, you know, the IRS usually kind of trumps everybody. Would the IRS be able to take priority, so to speak, over those other encumbrances? No, Your Honor, because those are partnership-level encumbrances on a partnership asset. So the government, in foreclosing against the partnership interest, would be junior to all partnership-level debts, unless we apply one of the government's collection theories. It's an issue in this case. Okay. No, I think that... But at the time, you could have recovered that. We would still be junior because of the transfer, absent with the application on one of these shares. You're just in Holland's shoes. But wait a minute. I mean, the value, the documents themselves say the value of these assets, at the time, was $23 million. Correct. The transaction involved $15 million. Correct. So in addition to the houses, you've got $8 million of value, equity, we'll call it, in the partnership interest. So he does this transaction. Let's assume that it required the government to look to a different source for repayment than the stream of payments that were coming in year after year from these royalties. So let's assume that... I don't think anybody can dispute that. But what makes it fraudulent? Because a taxpayer substitutes one potential source of, in this case, recovery from a creditor happens to be the IRS, for another potential source of recovery. Because we look at the debtor's intent, the intent to hinder, delay, or defraud present or future creditors. And what I'm trying to figure out is if you get full consideration, which the government doesn't dispute, you admit that he got full consideration, and there's still the equity in the houses and the partnership, how does that evidence an intent to hinder or delay? Because he did not intend to use that money to pay the taxes. He intended to dissipate it. Richard Rudder, Holland's personal attorney, testified that there were two purposes of this transaction. One was to generate cash for Holland's personal use in a lump sum, which he then dissipated. The second purpose was to remove these assets from the reach of creditors, specifically including the IRS. You realize that's not the words. He said the purpose was bankruptcy remoteness. Yes, Your Honor. Have you looked at the cases that... That apparently is a phrase that is a term of art. Have you looked at the definition of bankruptcy remoteness? I did not know that that was a term of art. I have not looked at the definition. Well, it's spelled out by the Seventh Circuit what that means. And it doesn't mean purpose of hindering creditors. It means if a lender wants to lend money and wants to make sure that they don't have to fight with other creditors over that sum of money, they can put the asset in a form that separates it from who originally owns it. That's exactly why you'll form a corporation in many instances. So you get the benefit of the corporate form, and the corporate assets are then bankruptcy remote from the individual. There's absolutely nothing wrong with that unless you can show an intent to defraud. Your Honor, I assume my time is up. I've got some more questions for you, so go ahead and answer Judge McKeek's question. Yes, Your Honor. So in Perrath, for example, this court affirmed a fraudulent conveyance determination notwithstanding that there was a finding that adequate consideration was exchanged. We think that the finding of adequate consideration, the fact that Holland ended up with a big pile of cash and shares in a partnership that were equal to the value that he gave up, does not necessarily preclude a fraudulent conveyance determination. Issue is not whether he's treated fairly, it's whether his creditors are treated unfairly Correct, Your Honor. as a result of this deal. And we would submit that this is Now, would we look to see if the creditors are treated unfairly? Do we look at what happened to the creditors and their ability to recover at the time of the transaction? Or do we look back now, 10 years later, when that debt has gone from $4 or $5 million to $20 million? It depends on the different collection theory that we're applying. So in the fraudulent conveyance sense, we're looking at the intent at the time of the transfer. In the alter ego context, what we're looking at is the relationship between the taxpayer and the entity. As the Seventh Circuit described it in Sealand Services, you're looking at two related parties where there's a heaping of liabilities onto one of the related parties, and a squirreling way of assets in the other. And here, the royalty assets are generating tax liabilities on an ongoing basis. The assets in the income stream are located in the partnership. Holland is stuck with the past, present, and future tax liabilities attributable to those assets. But we can't reach the assets that are generating the tax liability to satisfy the tax liability. That's the type of an unjust loss that the alter ego doctrine is intended to look to remedy. At the time of the transaction, could you have reached a sufficient amount by levying on the partnership interests to pay off whatever you owed at that time? The assessed balances, but the IRS could not levy for the 91 through 94 years, or the 95 through 97 years, because Holland initiated tax court proceedings that precluded collection until 2002 for the earlier years, and 2006 for the later years. That's when the assessments hit for those? Correct. If the IRS assessed the 2000, in 2002, there was a tax court decision for 91 through 94 that allowed the assessment for those years. He's told very shortly before he does this 95 deal, or 98 deal, right? Right. He's told about a potential assessment that may be coming his way. For what years was that, 91 to 94? 94. Okay. And what all in, you know, liability, interest, penalties, et cetera, what was the number that he was told you may be liable for? Yes, it was 1.8 taxes and penalties plus 2.1 interest, so 3.9. Okay. So he's told for that. How much time passes between that heads up and him doing this 98 deal? That's a month. Why? I mean, so Judge McKeek points out that the royalty assets are worth 23 million. You say, and so the royalty asset is transferred to the partnership, right? Correct. And then that asset becomes security collateral for a loan that the bank then makes to the partnership, correct? Nominally to the partnership. Nominally to the partnership, but somehow the money goes directly to Holland, correct? But the amount of the encumbrance on the royalty asset was 15 million? Correct. So why couldn't the IRS, whenever these assessments were made, why couldn't they take the value of Holland shares in the partnership and thereby get whatever equity remained of that 8 million that would appear to have existed in 98? Why couldn't they reach that by getting the partnership shares? Ultimately, the IRS could have done that if it had at that point discovered this complicated series of transactions and figured out how to unravel them. I don't think there's evidence that the IRS knew in 2003 that this transaction had occurred or the full scope of this transaction. Okay. There was some period of time where the IRS was trying to figure out what had happened to Holland's assets. When did the IRS figure this out? I think that the IRS became aware of the transaction, not necessarily what it could do to unravel it, but I think that was roughly 2004 that it began to become aware of the nature of the transaction. Was there any equity left in the partnership shares at that time? There would have been equity left in the partnership shares, although junior to partnership level debts, including the loan, including the partnership's attorneys and accountants' claims, et cetera. So that reduces the equity, in other words. Correct. I thought there was a letter from the IRS effectively saying something like, go ahead with your normal course of business until there's an assessment. So weren't they, in some respects, put on notice that this deal was happening in 98? You know what letter I'm talking about? Yes, sir. I don't remember where it is in the record, but I remember reviewing a letter that said something to the effect of, until there's an assessment or something like that, you can continue with your regular course of business, and it was, I think it was the investment banker who was notifying the IRS and asking if they had issues. We don't have the full communication stream there. We only have the letter back from the IRS, and what that reflects is that the IRS can't take assessment or collection action during the pendency of these tax court proceedings or IRS appeals. Well, we're not asking you whether you could take action. We're asking you if you knew about it. We've been asking you, well, why didn't the government do this, why didn't the government do that? And your response is, well, the government didn't know anything about it, but the government appears to have known about it. Whether they could do anything about it is a different question. Without having the other half of that communication, I don't know what it is that the IRS knew about. When it tells Edward Holland a month after the transaction, after the 1998 transaction, you can continue your normal course of business with the Pullman Group, Edward Holland in the Pullman Group. This should be the partnership's relationship with the Pullman Group, not Edward Holland's. So I don't know what it is that that's referring to. Without the complete set of that communication, I just don't know that there's a full disclosure of the transaction. Okay. Should we hear from Appalese? Could I ask just one other question? I know I'm getting us into a different area here, and so I don't want to give you any more time other than just this one question, and that deals with the priority question with the Bank of Scotland. The government's position seems to be that when the financing statement filed by the bank lapsed, that that somehow constituted a release of the bank's security interest. And that's just simply not what UCC law applies in general and in New York in particular. It does affect the issue of perfection and what happens to subsequent loans. But the only way that you then jump ahead because of somebody lapsing is if something happened to release their security interest, which is not what happens with a lapse. So could you explain where I'm wrong there or what your argument is? So to qualify as a security interest, as the holder of a security interest, for purposes of priming a federal tax lien, we have to look at the definition of holder of security H1, which references an interest that has become protected under local law against a subsequent judgment lien. And this court in Citizens State Bank said that the tense of has become protected is important, not that the interest had become protected in the past, not that it will become protected in the future, but that it has become protected as of the relevant date, which if you look at Professor Zinnecker's article, the relevant date is when the IRS records its notice as a federal tax lien. At that time in 2012, the Royal Bank of Scotland does not have an interest that has become protected against subsequent judgment lien creditors under local law. If a subsequent judgment lien creditor came in and recorded an interest, that would be junior to a subsequent judgment lien creditor. It has not become... In what case are you relying on for that? Citizens State Bank is the case dealing with the tense of has become perfected or protected rather than had or will be perfected in the future. All right, you'll have your rebuttal.  Here from the Applebee's. May it please the Court. My name is Gregory Fleisler, Moses and Singer. I'm here on behalf of Applebee's Royal Bank of Scotland. Are you taking all 15 minutes? No, I'm going to take 12 minutes. My colleague will take the remaining three. But hopefully I can take less than that. We will. I just gave you a great segue into your argument here. Yes, thank you, Your Honor. A couple of things. I had some prepared remarks, but listening to the dialogue back and forth, I want to try to focus on some of the questions that you were asking and some of the answers that the government gave. One thing I just heard was the government said that millions were owed at the time of the transaction in 1998, but as you pointed out, that was all paid off. I'm not either impressed or care very much about that getting paid. What I'm more interested in is the effect of this transaction in 1998 upon post-98 debts. Specifically the assessments that are likely coming based upon the notice that Mr. Holland gets a month before this deal. Okay. So there was only one notice at the time of the transaction that he received, and that It was for close to $4 million. Approximately four years later, it was determined that he owed, I believe it was 1.3 of the four. That was also addressed by the IRS letter that Judge Murphy referred to, which is docket number 224-13, which was a July 17th letter from the IRS. It was not to Edward Holland, it was to the Pullman Company, which was the investment bank that worked on structuring the transaction. To put this in context, it was to Ted Chung, who I gave a deposition in this case. He explained that for a number of months prior to the transaction being conducted, members of the investment bank, the Pullman Company, as well as from Wilkie Farr, which was the owner of the transaction, were diligently working to schedule all existing debts that were then owed by Mr. Holland to ensure that sufficient monies would be escrowed as a result of the transaction. Did they do anything as to this potential tax liability for 91 to 94? They did not escrow money because it wasn't yet determined until it was resolved and then assessed. There's a big difference between how this deal treats extant debts at the time of the transaction and the ability of post-98 creditors to collect on those debts. Is that fair? That is fair. However, at the time of the closing, there were no debts. Right. I'm talking about post-98.  As Judge McKee pointed out, there were significant assets, $23 million exchanged, 15 in cash, some of which went to transaction costs and paying off the debts. Five million of transaction costs. Yes. Mr. Holland walked away with $8.5 million in cash, plus, as you just pointed out, Judge Kesslidge, $8 million in equity in the partnership units. Right. All which existed post-transaction debt-free. And then no further taxes were assessed for the next five years. Those partnership interests or the partnership itself becomes more encumbered with debt in the next six or so years. Is that fair? Is that correct? No. I don't believe that. I mean, there's humongous attorney fee. That all got paid out of the cash. No, I'm talking about debts that become additional debt that owed by the partnership after 1998. So that... At 8 mil starts to go down in equity, correct? Yes, over time. And then the government didn't commence this action until 2012. But then it couldn't have gone down very much because they sell these assets for $21 million. That's correct. When the court gets involved. That's right. So over that 14-year period, there were still at various times, depending upon what was going on, millions of dollars available. The IRS never sought to take any of the cash, never sought to take the partnership units. And many, many years had passed before there was any sort of assessment at all. Can I ask, just at a high level of generality, this seems to be a battle of creditors, right? So a third party lost the money and who should have priority? What did your client do when your client got involved in 2005 in terms of due diligence to see what other debts were owed by Holland? So for instance, the 1998 transaction paid off all of the assessments. As I understand it, there were some 2003 assessments. But were those paid off by the 2005 deal? When you restructured the deal in 2005, what did you do? What did RBS do to determine what debts were owed? Yes, so as a result of the refinance, there was not a similar sort of escrow fund and satisfaction of debts. As I looked at your brief, there was the chart and it said that assessments started coming in in 2003. Yes, there were assessments beginning in 2003. There was money exchanged as a result of the refinance, and Mr. Holland had sufficient funds to pay those debts at that time, seven years after the initial transaction, if he so chose, to speak to what was going on between Mr. Holland and the IRS in the 2005 or post-2005 period. Stick a club in the sand? These are all equitable doctrines, and so it seems to me the person who is acting in the most good faith should potentially... That's a relevant question. And so what did your client do in terms of due diligence? It seemed to be these things just piled up over the years in terms of 2005, of looking at what debt would be owed to the IRS. Yes, Your Honor. At that time, the funds that were extended to Mr. Holland were more than sufficient to satisfy the then-existing debts in 2005. What reason is there to think he's going to use it to pay it off? I mean, why not do what they did before, which is say, you know, we're going to escrow it for a reason, because he's not going to pay it off. He's going to go buy more houses or whatever. I mean, why is that any assurance that everything's going to go well and that these monies are going to go to legitimate creditors? Obviously, the bank is sympathetic to creditors, rather than get dissipated. At that time, again, I think the only debts that we're aware of were those assessments that had just sprung up before that. Let me reframe the question this way, if I might, for just a second. If Royal Bank of Scotland didn't advance any money, then it probably would be a different discussion that we're having. But you advanced enough money to pay off the partnership debts, correct? Yes, Your Honor. You advanced a little bit more that went to Holland, I think it was $1 million or something like that, and then you set up a line of credit that he could draw down on in the future, and some time later, I think he drew down another $4 million, right? Yes, Your Honor. Now, are you aware of any doctrine that when a bank steps in and refinances a transaction like the bank did here, that the bank has any obligation or duty to anybody to see that the owner of the borrower, in other words, Holland owns the partnership, that the owner of the borrower then uses the money that flows down to him or her properly? I'm not aware of any such doctrine, Your Honor. Any case that says that or even hints at that? No, Your Honor. Now, if you were involved back in 1998, we might have a different question, because then you're part of the initial transaction. But I assume your position is you're just stepping up, giving value, you're refinancing, you didn't do any of this stuff. Yes, Your Honor, that I believe is why the entire focus of the case has been on the intent and the transaction that occurred in 1998. So then the question that you have to face is whether you get priority, whether the priority that you had is maintained after your financing statement lapsed. Now, the government says that once that lapses, then under citizen, that wipes out any prior priority that you had. What's your response to that? There's no basis for that whatsoever. The government has said that as a matter of course, but hasn't substantiated with any law or UCC requiring that the pre-lapse perfection somehow goes away. As I understand the case you cite and the law review article you cite, I think you cited Highland. And I thought the key distinction was between liens that arose pre-lapse and liens that arose post-lapse. And so my question for you is, when do we determine when the government's lien arose? Was it when the government gave notice in February 2012? Because if it arose post-lapse, as I understand the distinction between the case that you cited in your own brief, that would suggest that that subsequent lien would take priority. So even if the subsequent liens take priority, they're a de minimis amount and it doesn't matter. Let's take the period of time from when you did the deal in 2005 to the time that it lapses. Now, what Citizen says is that the interpretation of the words has become, excludes security interest which has not yet been perfected under local law. At the time of the lapse, had all the liens that you're relying upon been perfected? Yes, Your Honor. As well as those interests which have been released. Have you ever released a security interest? We have not, Your Honor. And the fact of lapsing is not a release. It's simply a question of priority between one creditor or the other based upon the notice that one gets when they look at the UCC records. Right? Yes, Your Honor. We're protected at least through the... So your financing statement lapses. The IRS then files liens after that. Your position is that can't, under the UCC, constitute jumping them ahead of something that you had already perfected that they knew about if they had looked at the UCCs, even though it's lapsed? Absolutely correct. Now, as far as subsequent advances or loans after that, what you're describing as de minimis, you probably lose as to that. Yes, and if that's the case, then that doesn't make a difference. Fortunately, there's a... Yes, Your Honor. You kind of answered my question, which if it was the notice of the lien date, that's critical. I think the notice in February 2012 would have been for the entire amount. But you're saying that you think the government's lien arises at the time of assessment. And so 2003 through 2000, when you lapse, December 2010, all those would have happened when the security interest was still on file. Correct. In other words, the assessment doesn't relate back for perfection purposes, for either perfection or priority purposes. Yes, Your Honor. Is that essentially your position? Yes, it is, Your Honor. All right. So, I mean, going back to the question whether the alter ego theory or the nominee or whatever theory has merit, it seems to me that the equity at the time the government figures out the particular... So there's the 98 deal, potentially $8 million in equity at that time, it would seem. The government assesses the 91 to 94 liabilities, I think, in like 2003? Correct, Your Honor. It's about four at that time? Do you recall? I believe it was significantly less, actually. I think that was 1.3 or so. Well, that's because the tax code in the meantime said it really isn't four, what they've been claiming all along. It's 1.3, which is why they protested. Do you have a sense of the total amount of assessments, say, between 98 that arise between 98 and 2005? The assessments? Yeah, like additional... So there were no assessments between 98 and 2003? No, I'm saying between 98 and 2005. Okay. So in our brief, actually, we included a chart of how the assessments arose by year. You can see they begin in 2003. That was the one over a million. But 2004, 2005, 2006, and I believe 2007, as well, are all relatively smaller amounts in the tens of thousands in there, certainly all under a million. And they don't get large... There's no large one again until about 2008. Okay. So it's circa maybe, let's say, two or three million in assessments by the time of the 2005 deal? You think? I don't know. Roughly, give or take a couple million. I'd have to check the chart, but... Yeah. Yeah. My guess, it would have been maybe less than two million. I mean, I'm just trying to figure out whether the government is impaired in its ability to collect on these later, post-98 assessments, in fact, as a result of the 98 deal. Because they don't know, they don't have assessments in hand at the time of the deal. They don't have the transaction particulars. And by the time they have the assessments and they understand where Mr. Holland sent most of his assets, on which they normally put a lien or whatever with the companies paying the royalties, by the time they figure out, are they basically shorted a certain amount, certain millions, which is really what you're fighting over. It boils down to, I don't know how many millions, but if you get 14 point whatever out of this 21, then they're going to be shorted some amount in their view or whatever. And so are they shorted, at the end of the day, even if there's equity, are they shorted a certain amount by their inability to get, put, you know, a lien on the royalty payments themselves? Sorry, I know, I apologize. This is really complicated. I know. There are a couple of things tied up in there. If you're first, the government's not going to be able to collect their 19 million. Do you agree with that? Yes, they'll collect something less. Because you're going to take nine and they own 19 and that adds up to more than 21. So if they come before the other creditors, which has not yet been determined, but if they're second in line, then they would get the remainder, which would be approximately $10 million or so. Right. I understand. We're fighting, we're not fighting about the total amount that they're entitled to or the total amount you're entitled to. Somebody's going to get shorted. And I'm just trying to figure out whether the government's ability to collect the loans, I'm sorry, the assessments that it makes after 1998 was, as a practical matter, impaired by the 1998 transaction. So, no, it wasn't impaired by the 1998 transaction. If anything, the 1998 transaction helped them recover whatever they needed to recover. That is, at the time of the transaction, they were owed the $1.4 million and they got the $1.4 million. Immediately after the transaction, there was no money owed. In subsequent time after the transaction, there were still the partnership units and whatever cash or whatever that cash ended up being exchanged for, whether it's houses, real property, whatever it was. So, the problem here is that the government never sought to, once it had its assessments, never sought to recover on those. And then, secondarily, one other very important point is that it really isn't the 1998 transaction that the government is complaining about, even though they say they are. What they're saying is something that Judge McKeague pointed out at the very beginning of the government's argument, that once that money came through and things, other transactions followed later, often years later, then really they should be complaining about, oh, if Mr. Holland bought a house for a relative, then perhaps that transaction, perhaps, could be classified as a fraudulent transfer if there were no full and fair exchange, etc., etc., if he had the debts at the time. But none of that is at issue here for some reason. Here, they're only attacking the 1998 transaction. They're claiming in their complaint that these subsequent transfers occurred, but as you can see from the briefs and from the record, there's no evidence with respect to any of that because I think it just doesn't bode well for what they actually did. Are these royalty amounts still coming in? The royalty amounts, I believe, are going to... Is somebody still paying royalties on these things? Yes. Oh, yeah, forever. Yeah, that's why it was able to be sold for $20-plus million. So where's the money going? It was up to $21 million. So where's what comes in after that going? No, no, I believe my colleague can probably identify this better than I can because he was involved in the 2015 transaction, but I believe a third-party company came in, bought the rights for the $21 million, and now they collect the royalties. I know this pertains to conduct by Mr. Neuschultz's client, but it's relevant to your position here. What do we do with the apparently sham nature of this partnership? I mean, he treated it... It's a joke. I mean, he has total control over it. The separate form is just... He's the one who disregards the separate form. I mean, the 98 payout goes directly to him, not through the partnership, right? Partnership has the assets, and he gets the loan proceeds. Am I misunderstanding something there? He... Well, maybe... Okay, let's set that aside. I mean, he has total control over this thing.  He's the managing member or whatever, and it just seems like this Edward-Holland partnership, LC or whatever it is, is just a complete sham and has no separate form in fact, no independence whatsoever from... Well, all the technical requirements were maintained. They were independent directors. It was necessary to the transaction to be formed, and at the time that it closed, there was no use of it whatsoever to commit any sort of fraud or wrong or hindrance or anything like that. If anything, it made it more possible and easier for the government to collect had it decided to do so. Wouldn't it be way easier for the government just to slap a lien or whatever they do on the royalty stream itself, you know, rather than have to go after these partnership shares which have eight-figure encumbrances on them, that there's something left over or something? Well, I mean, the partnership shares were worth $8 million. They were worth 23, 15 was cashed out, so they still were worth $8 million. Right, but they don't have the assessments. Of their own. You can't go and levy the royalty streams because those streams were assigned. That's a separate argument that we make in our briefs. Before the 98 deal, if the 98 deal never happened, and now it's 2003, they could have levied those royalty streams easily, right? If the royalty streams had not been assigned? In the 98 deal. If the 98 deal never happened... If they had not been assigned, they would have been able to be levied, but he didn't owe any money at that time. The money that he owed, he paid. Well, but, you know, you get a letter in the mail that the IRS thinks you owe $4 million. That's really going to get your attention. That's not just sort of, you know... Yeah, and that's why you're calling and writing with the IRS saying, is it okay for me to go forward with this? How much money do I owe you? Let me make sure you get paid everything you're owed. But, you know, how much do I owe in the sense of pre-98, 1.7, post-98? Maybe that's what he's worried about. That's their theory. Well, I mean, maybe. That's why at the beginning of this... We're not here on a decision on a motion to dismiss. We're here... This case is closed. Old discovery is complete. There's a lot of... That's part of it. There are a lot of maybes. There's a lot of theory. But there are very few facts. But the idea that, as the district court found, that Holland got treated fairly, ergo creditors got treated fairly. That's basically what the district court says. And I think conflating Mr. Holland's interests with those of the creditors is a very questionable thing to do. I think what... He was trying to put himself first, at least in the evidence that they present. I would strongly disagree with that. Is there anything legally wrong with what he did to collateralize the stream of... the future stream of income? Absolutely nothing. So we have to look at what he did with the money to find out if there was something wrong? What he did with the money many years later. Yes, Your Honor. Well, within months he had spent most of it, right? I don't know if it was within months that he spent most of it, but... Well, within months he spent 3.8. So that's half of it, right? A little less, yes, Your Honor. Yeah. All right. Well, have we asked Mr. Fleeser enough questions here? I think so. All right. Thanks a lot. Appreciate your thoughtful answers. Thank you very much. Here from Mr. Neu-Schultz. May it please the Court, I'm Neal Neu-Schultz on behalf of Edward Holland Limited Partnership. The... To answer the question about the 9194 liability when it was assessed and how much it was, if you can go to the complaint and add it up, paragraph 7, it's a total of 2.... if you want the full number, it's $2.7 million. It's $2,767,062.04. Okay. Thank you. That's helpful. And at that... at that time, Holland had borrowed... had received $8 million so he had sufficient... if his intention of setting up the partnership was to avoid not paying taxes, borrowing $8 million is not the way to achieve nonpayment of taxes. So there was sufficient amount borrowed to cover that liability. There was sufficient amount borrowed to cover all of his liabilities if he had timely paid them. One of the problems, and to understand how this works, is they take the royalties, they stick them in the limited partnership, and then Edward Holland pays tax on the royalties as they're being used to pay off the creditors. So every year, he gets a tax return that shows the royalty income, which the government would see if they wanted to know where the royalties had gone. They would see it on his tax return. In addition to that, I believe a 1099 would be issued to the... on the royalties to the partnership, and then what's called a K-1 would come down that would be reflected on Edward Holland's return. So it was... it was all available... the information was all available to the government at the time. One of the concerns... In other words, the government knows from these K-1s or his tax returns, they know pretty quickly that the assignment's been made. They can see his income, and they can see that he's reporting the income, and they can see... if they see the 1099 that's related to the partnership, they'll see who's paying the royalties to the partnership, and they'll see that he has to report that income. The problem that he has is that he's paying tax on income, which is going to... not going to him. It's going to the investors. In addition to that, during... earlier in the argument, it was suggested that the value of the partnership is going down over time because of possible liabilities. I'm not sure of any liabilities that occur that cause it to go down. But the equity value is actually going up because the principal on the note is getting paid every time those royalties are paid to the investors. So the amount of the secured interest is actually going down over time. It goes down sufficiently so that he can refinance and purchase... and purchase again. I mean, and do another refinance and get more income. He would... he would be on... or the partner, I guess, Holland or the partnership didn't know that they would be on the hook for the taxes. Why wouldn't they have structured the deal in 98? I thought that was terrible, the way they didn't... either didn't warn him or didn't, you know, say, you're going to need to hold on to this money. You cannot spend it because you're going to have very large liabilities and you're not going to receive that cash with which to pay the taxes. But that's the... what's causing the large liabilities here is because he's getting... he's getting taxes on funds he doesn't have. The other point I think is important is raised by Judge Kethledge and that is the insignificance of the partnership. One of the problems with this case is you could take almost any business that's been set... closely held business and go in under the structure of argument that the government has and say, that business doesn't exist. There was a transfer into the business without consideration. You're still benefiting from the property that you transferred to the business. I could set up a business, transfer machinery and cash into the business, take profits out. It would all be the same. I'd be benefiting from what I transferred. I'd be closely in control. I'd be closely... it'd be... you know, everything would be... all the same arguments would apply. There would be no separate business entity if you adopt the principle that, in this case, the partnership was a sham because that would mean that every single business entity would be a sham. I've addressed that in the brief. Isn't that also why every single case they cite deals with lack of consideration of the time of the transfer? I'm not sure about every case they... but that's very possible. The... the... the way to address that issue is to look to see if there's a legitimate business purpose in setting up the entity and there was. I mean, this was a loan... this wasn't Holland's idea. It was a loan transaction. Those cases are addressed on page 31 through 35 of my brief. The situations where a legitimate business purpose rebuts the implication that there was a fraudulent transaction. What do you think, again, the legitimate business purpose was? To... to do this... to do this loan. It wasn't... and to keep in mind that this wasn't Holland's idea. This was the investors that wanted the limited partnership. So that they... they actually don't... you know, somebody has to pay tax on those royalties and by doing this limited partnership situation, they create a situation where Holland has to pay tax on the income from the royalties even though they're using it to pay... to repay the loan on the... against the royalties. Is it largely undisputed that the loan could not have happened without this structure? I... I believe so. The bankruptcy remoteness was an important factor in getting the loan. They wouldn't have... they wouldn't have gone... according to one of the depositions, they wouldn't have gone through with it. I don't know who they were, but they were testifying that this is pretty common that when you monetize an asset, you have to separate it from whoever owns the asset. Exactly. Would it be safe to say, Mr. Nussholz, that one problem that we do have here under fraudulent conveyance is that the... is that the court stopped at the question of adequate consideration. And the... the cases, no matter which law we apply here, seem to say that you have to look at the other so-called badges of fraud. Now, you're basically saying that your guy was duped. The IRS is saying this was a carefully calculated scheme to suck money out so the IRS wouldn't get it ten years later. But those are all badges of fraud questions that the court never got to. So, why would it not be appropriate, at least as to the fraudulent conveyance question to remand the case back to the judge to address these other five or six, whatever the number is, badges of fraud indicia and then simply make a determination on all of them? RBS's brief has a section on this... on case law relating to whether a judge must go through every single element of a particular, you know, whatever the elements are in order to reach a conclusion and that she had in fact raised these concerns but felt that the consideration was the most important factor in making the decision. And the cases that have looked at that, I mean, the consideration of what was received in a legitimate business purpose is enough to rebut all of the fraud implications from the circumstantial evidence that you're referring to, the six elements, closeness, whatever, all the other factors that are involved. Well, maybe that's what the judge will say if we do remand it back but the opinion doesn't really say that, does it? It doesn't say what I just said. It just references them and then goes out and makes a decision. And the last issue, I'm out of time, but the very last issue as Judge Kethledge has said is the liability company and the government. And it's a cardinal rule of business entities that the creditors of the entity come first. The owners cannot take ahead of the creditors. The creditors have to be paid before the owners get anything. And what is going on here is that the government is saying we want more than what the creditors are paying. And that's the danger, I think, in this case, is that if the district court were to rule in favor of the government, we'd have situations where people would be dealing with business entities and the government could always come in later and just throw out the creditors. And that's all I have to say. Thank you. Your arguments The thing that seems to have emerged in this argument is that the government may have had more ability to collect the amounts owed after they were assessed  might think in reading the government's brief. And so why didn't the government seize or whatever the partnership shares take away from the government? Take what Holland, take his equity in the partnership shares, chase some of the properties or the assets that he had purchased with the funds from the transactions. Why didn't the government do some of those things before, I mean, you know, period. So the reason for the delay is not in the record. Typically the reason why something like this takes a long period of time is partially because of the prohibition on assessment and collection during tax court proceedings, partially because of lack of resources at the IRS, partially because when you have a complicated financial transaction it does take a long time to try to collect the assets. So of the 19 million owed by, has the government been able to collect any of that elsewhere? They have made some involuntary collection. They've tried levying against another corporation in which Holland has an interest. They were able to seize that one house. They're levying against his social security payments. Any idea how much the amount is? I don't know the amount. It's dwarfed. We're not even keeping up with interest at this point. That the judgment has increased. There's 21 million here. You both are owed essentially 29 million. There's an 8 million gap. There's no chance of picking that 8 million through his other homes or assets. I believe it's Mr. Holland's position that he doesn't have other homes. We're trying against whatever assets we can locate. Could I ask the question, not Judge Murphy's question, but see if we can frame this in a slightly different way in terms of whether the government was advantaged or disadvantaged by this? The government is making these assessments. Eventually they file liens. Had this transaction not occurred, they would have had to attempt to seize presumably from these two record companies that were selling these songs, they would have had to try to seize the stream of revenue every year in perpetuity, essentially. Am I right about that? Correct. That's what the IRS had been doing in the past. What happened here by this collateralization is that this future stream of income was then reduced what I think would be correct to call its present value. That's what ended up with this $21 million or something like that, right? $23 million. The papers say that this stream of income in the however long into the future they were using was worth at that time $23 million. Right. So had you taken the steps, which you've sort of reluctantly agreed that you could have taken the steps but for all these reasons you say you didn't, in a way what would be wrong with looking at this as a transaction that actually would have helped the government because it took these future stream of income, which I'm betting wouldn't even keep up with the interest and penalties that you've been charging, and monetized it so that it was to its present cash value that you could have gone after and you could have paid off everything that he owed you. So what's wrong with looking at it in that way from the government standpoint? The transaction in 1998 facilitated the collection of $1.4 million in taxes that had been assessed. There's another $7 million that's currently owed on pre-transfer years that has not been collected. There's another $12 million for post-transfer years that has not been collected. If we take a broader view of this, the government has unquestionably been hindered because those taxes remain outstanding. We collected $1.4 million at the expense of collecting the next $19 or $20 million. And I think that perhaps... But how long would it have taken you had this stream of income not be reduced to its present value to collect this grand total that you've just set forth? Well, its present value minus $5 million in transaction costs, right? That's fair. The IRS had served four levies in the past that collected $1.5 million. So the IRS was collecting in the millions of dollars by levying on these royalty rights. And I think that the best way to frame this is perhaps through the government's alter ego theory, which doesn't necessarily even have to involve a transfer of assets. What it's looking at is the relationship between Holland and the partnership. Are they effectively one and the same? Are they operating with the partnership being a mere instrumentality of Holland? Instead of looking at this as whether Holland and the partnership exchanged adequate things, we need to look at this as whether Holland and the partnership are effectively left and right hands of the same person. So when the district court focuses on what goes from the left hand to the right hand and what goes from the right hand to the left hand, we think they're missing the point. The government's collection theory, the alter ego theory, is saying the government should be able to attach what's in both hands. And how would this transaction here in a very global sense be any different than setting up a corporation? You have an individual business person. They own a machine shop. They're producing a product. It becomes quite valuable. They're concerned that this product is going to harm somebody. They're going to owe damages. So they put these assets that produce this product into a corporation that they own 100 percent of. They transfer it into the corporation. The corporation borrows money so the corporation then can pay the value of what was transferred into the corporation back to the person who transferred it. That is this transaction, isn't it? We don't think that this is a machine shop selling a product. This is a partnership that's set up for the sole purpose of serving as a conduit for a personal loan to Holland. The money doesn't even go through the partnership. There's no business purpose. The transaction said right in the papers that Holland says, I will transfer these assets to the partnership if the money then comes to me. And that's what happened. That's what the papers say, right? I don't know if that's what the papers say. It is what they say. And that's legit. People can monetize the present value of an asset rather than wait for the stream, right? They can. It's a question of whether we should be able to directly attach those assets. But what difference would it make if that payment had gone to the partnership and then pursuant to the terms of the agreement, the partnership just endorsed the check and forwarded it on to Holland, what possible difference does that make from any kind of an economic reality question? It doesn't make a difference in terms of economics, but it certainly makes a difference in terms of whether this is a real partnership with a real business purpose. No real business would take out $13-plus million in loans and never see a penny of that money go through the partnership, never reinvested in any kind of a business purpose. This was solely for the purpose of channeling money to Holland that he then dissipated rather than paying his taxes. Are you suggesting that somebody, some person who has a very lucrative stream of revenue to which he is entitled in the future, that that person if they want to choose to monetize its present value now rather than wait for whatever amount it is annually, that they must engage in, they must, if they are going to do this sort of transaction with a      the law, it should be subject to the law? I think that that might be a possibility. So you're suggesting that maybe that's a possibility. I think that's subject to invalidation. If for whatever reason they choose to conduct this transaction through a partnership or some separate corporate form. I'm not saying that that's automatically the case. We think it depends on all the facts and circumstances. That's what this court said in Leggett, that's what the Michigan Court of Appeals said in Miller. But what you just said would apply to any transaction. That's different. But you were saying it has no purpose other than to fund this transaction. I would imagine there are many transactions that have an entity involved that really has no purpose other than to serve that transaction. I think we would be concerned about potentially invalidating a lot of perfectly legitimate transactions if we wrote an opinion based on this sort of no purpose idea. Certainly that's not the only factor in alter ego liability or nominee liability or fraudulent conveyance liability. It is an all facts and  But most of these transactions where someone's trying to monetize a stream of payments aren't going to involve someone who's under audit for five separate tax liabilities for nine separate tax years. This is all in 1998 what you're saying? In 1998 he owed taxes for 86 and 90 through 97. All these things you just mentioned those were in place in 1998 is that what you're implying? Correct. Although certainly those are in the record. You don't cite them. I'm sorry your honor? You put into evidence evidence that he is essentially defrauding the government by virtue of the representations that he was making to the government in 1998? Yes. We put in his collection statement his form 433 collection statement. All right. We'll look at that. That I may That's okay. It's at page ID 5000 5004 5005 where he says I have assets of roughly $840,000 liabilities of $4.5 million putting aside the tax liabilities. That's helpful. That's good that you're able to flag a page ID number at the podium. Not everybody can do that. Any other questions? Can I just ask a question? Doesn't your whole would you concede that the security interest had not lapsed that RBS would be unequivocally entitled to priority because of the holder of the security interest under the subsequent statute? That may be correct. We do have a coitness argument but our primary argument in terms of priority deals with the lapse of the security interest. We're talking about equitable doctrines here. Your entire case hinges on quite a technical gotcha in some respects. The only reason you're going through all this trouble is because of this lapsed financial statement. These are all equitable doctrines. What do you make of that high level conclusion that it seems to me your case hinges on a technical. That's an important question. We're not here because we think we have priority over the balance sheet. If we can't directly attach these assets, not only are we behind RBS who has a claim of $10 or $11 million now, we're also behind the partnerships accountants and attorneys. Those claims aren't even before us. They will be paid as partnership level debts before the government. Are those parties before us in this appeal? Mr. Newsholtz has not... The priority between the government and these other parties beyond the bank, are they before us in this appeal? No, Your Honor. Did the district court rule on that for either of those reasons? Because absent the application of one of the government's collection theories, it is going to be junior to these other parties. You're just saying this is one reason why this appeal matters to you. It's not something we would decide. If the court says... Right? Give me a yes or no. This matters to you, but you're not asking us to say, okay, ergo, you recover before the accountants do. You just want to know, is the theory valid or not? Is that correct? That's correct, but if this court affirms and says all ergo, fraudulent nominee are out of the window, then we will be behind these parties. You're just telling us the potential consequences. You better not wipe out a bunch of legitimate transactions while you're trying to get the IRS their money. Okay? All right. Thanks a lot. We appreciate your arguments, both sides. Case to be submitted. Clerk may adjourn court.